IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN EBERT obo SE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:21-cv-35-JTA |
| | ) | |
| KILOLO KIJAKAZI, | ) | (WO) |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), the plaintiff, Karen Ebert ("Ebert") on behalf of her minor daughter, SE, brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Ebert's claim for Supplemental Security Income ("SSI"). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 10, 11.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be REVERSED and REMANDED.

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

## I.     PROCEDURAL HISTORY AND FACTS

SE was born on June 1, 2011 and was a school aged child at the time of the administrative hearing held on April 1, 2020. (R. 100, 101.)[2] She is currently in the third grade. (R. 106.) She has not engaged in substantial gainful activity since the application date of November 13, 2018. (R. 101.) She alleges a disability onset date of August 1, 2014, due to attention deficit hyperactivity disorder ("ADHD"), asthma, heart murmur, and high QT. (R. 106, 328.)

On November 13, 2018, Ebert, on behalf of SE, applied for a period of SSI under Title XVI of the Social Security Act ("the Act") (42 U.S.C. §§ 1381, *et seq*.). (R. 100, 265.) The application was denied on February 13, 2019 (R. 100, 222-225), and Ebert requested an administrative hearing (R. 100, 227).

Ebert and SE participated in a telephonic administrative hearing on April 1, 2020. Because Ebert was unrepresented, the Administrative Law Judge ("ALJ") explained her right to have an attorney or non-attorney representative. (R. 117.) After Ebert stated that she understood those rights and "chose not to [have a representative]," the ALJ proceeded to the hearing. (R. 117-18.) The ALJ denied Ebert's request for benefits in a decision dated August 4, 2020. (R. 97-112.) On August 27, 2020, Ebert, then represented by counsel, sought review by the Appeals Council on the grounds that the record was not completely developed on the date of the administrative hearing. (R. 263.) On August 31,

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 19.)

2020, the Appeals Council informed Ebert that it would accept additional evidence that would be considered if it was new, material, and related to the period on or before the date of the ALJ's decision. (R. 89.)

Ebert submitted the following documents to the Appeals Council.

(1) September 18, 2020 - Child's RFC Questionnaire, completed by Dr. Christy McNair on September 12, 2020 (R. 27-28);
(2) October 6, 2020 - Records from the Sibley Heart Center dated September 18 and 19, 2020 (R. 9-26);
(3) (a) November 10, 2020 - School records from L.K. Moss Elementary School in Buena Vista, Georgia, dated September 9, 2020 through October 28, 2020 (R. 34-73);
(b) November 10, 2020 - Psychological evaluation conducted on September 9, 2020 and September 15, 2020 by the Chattahoochee-Flint Regional Educational Service Agency (R. 74-88);
(4) November 30, 2020 – Medical records from Zoe Pediatrics dated October 22, 2019 through October 21, 2020 (R. 131-81);
(5) September 29, 2020 – School records from the Marion County (Georgia) Board of Education dated October 9, 2019 through October 31, 2019 (R. 182-96); and
(6) September 29, 2020 – Medical records from Rivertown Psychiatry dated October 17, 2017 through July 26, 2018 (R. 198-204).

On December 14, 2020, the Appeals Council found no reason to review the ALJ decision and informed Ebert that the ALJ decision was the final decision of the Commissioner.[3] (R. 1-3.) On January 15, 2021, Ebert filed the instant action appealing the decision of the Commissioner. (Doc. No. 1.)

## II.  STANDARD OF REVIEW

Judicial review of SSI claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.

---

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty*, 245 F.3d at 1278. "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

### III.   STANDARD FOR DETERMINING DISABILITY

A claimant (or his parent or guardian) bears the burden of providing evidence that he is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a), (c); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A child under the age of 18 is considered disabled and eligible for SSI under the Act if the child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). *See Rodriguez obo R.C. v. Berryhill,* No. 20-14458, 2021 WL 5023951, at *3 (11th Cir. Oct. 29, 2021) ("A child under the age of eighteen is considered disabled, and thus entitled to benefits including supplemental security income, if the child has 'a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations ... that has lasted or can be expected to last for a continuous period of not less than 12 months.' ") (quoting 20 C.F.R. § 416.906). A "marked and severe functional limitation" is one that has "a level of severity that meets, medically equals, or functionally equals" the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, subpart P, appendix 1. 20 C.F.R. § 416.902(h), (o).

Disability under the Act is determined under a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At step one, the Commissioner determines whether the claimant is performing substantial gainful activity. *See* 20 C.F.R. § 416.972. If the individual is not, the analysis proceeds to the second step. *See* 20 C.F.R. § 416.924(b).

At the second step, the Commissioner determines whether the claimant has a medically determinable impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 416.924(a). A medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *See* 20 C.F.R. § 416.924(c). If the child claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the child claimant has

a severe impairment or combination of impairments, the analysis proceeds to the third step. *See* 20 C.F.R. § 416.924(a).

At step three, the Commissioner determines whether the child claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a Listing. *Id.* Here, the Commissioner considers the combined effect of all medically determinable impairments, including those that are not severe. *See* 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a), (c). If the child claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a Listing, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the child claimant is not disabled. *See* 20 C.F.R. § 416.924(d).

A claimant's impairment meets or medically equals a Listing only where it "satisfies all of the criteria of that [L]isting, including any relevant criteria in the introduction [section]." 20 C.F.R. § 404.1525(c)(3). To satisfy all the criteria of a Listing, a claimant must (1) have a diagnosis included in the Listings and (2) provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 416.925, 416.926. "For a claimant to show that his impairment matches a [L]isting, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

If a child's impairment or combination of impairments does not meet or medically equal a Listing, the ALJ will evaluate whether a child's impairment functionally equals a Listing by considering the following six broad functional areas, called domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004); 20 C.F.R. § 416.926a(b)(1). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has ' "marked" limitations in two of the domains [above], or an "extreme" limitation in one domain.' " *Shinn*, 391 F.3d at 1279 (quoting 20 C.F.R. § 416.924a(d)).

In reaching their conclusions, the ALJ considers "all evidence in [the child's] case record," including "information from medical sources (such as [the child's] pediatrician or other physician; psychologist; qualified speech-language pathologist; and physical, occupational, and rehabilitation therapists) and nonmedical sources (such as [the child's] parents, teachers, and other people who know [the child])." 20 C.F.R. § 416.924a(a). Medical evidence may include "formal testing that provides information about [the child's] development or functioning in terms of percentiles, percentages of delay, or age or grade equivalents," and the ALJ evaluates these scores together with information like reports of classroom performance and observations by teachers. *Id.* at § 416.926a(e). The ALJ also considers whether the child does activities that other children that age typically do, how much assistance the child requires from family members or teachers,

and the combined effects of multiple impairments on the child's day-to-day functioning. *Id.* at § 416.924a(b).

Further, the ALJ considers the child's symptoms, including pain, and the extent to which the symptoms can "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* at § 416.929(a). The regulations require that there be "objective medical evidence from an acceptable medical source that shows [the child has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged" and that the ALJ consider statements about the intensity and persistence of [the child's] pain or other symptoms "which may reasonably be accepted as consistent with the medical signs and laboratory findings." *Id.* The ALJ uses this evidence to decide how symptoms affect the child's functioning. *Id.* If the impairments do not meet, medically equal, or functionally equal one of the listings, a finding of not disabled is reached, and the claim is denied.

## IV. ADMINISTRATIVE DECISION

Applying the childhood standard, the ALJ found that SE had "not engaged in substantial gainful activity" since the date her application was filed. (R. 101.) The ALJ also found that SE has the following severe impairments: learning disability, ADHD, oppositional defiant disorder, and asthma. (*Id.*) The ALJ also found that SE has the following non-severe impairments: tinea corpuses, acute bronchitis, acute otitis media, paronychia (skin infection/nails), bacterial conjunctivitis of the right eye, and atrial septal defect. (R. 102.) The ALJ concluded, however, that SE has no impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments

8

in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 104.) Additionally, the ALJ found that none of SE's impairments, individually or in combination, functionally equal the listings. (R. 105.)

The ALJ stated that she "considered all of the relevant evidence in the case record" including: objective medical evidence and other relevant evidence from medical sources, information from sources such as school teachers and family members, SE's statements, and those of her parents and caregivers. (R. 105.) The ALJ determined SE had no marked limitations[4] in any of the six domains of functioning. (R. 106.) Specifically, the ALJ found a less than marked limitation in (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) health and physical well-being. (*Id.*) The ALJ found that SE had no limitations in the remaining two domains which are moving about and manipulating objects, and the ability to care for herself. (*Id.*) Based on the absence of an impairment or combination of impairments that meet or functionally equal the listings, the ALJ found that SE is not disabled. (R. 108.) The ALJ specifically stated that, pursuant to 20 C.F.R. § 416.920b, she did not discuss evidence that was neither valuable nor persuasive. (*Id.*)

---

[4] A "marked" limitation in a domain indicates that an impairment or combination of impairments interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a. A "marked" limitation is "more than moderate" but "less than extreme" and would be expected to result in standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.*

9

## V. DISCUSSION

Ebert presents two arguments on appeal. First, Ebert challenges the ALJ's findings of less than marked limitation in the domains of acquiring and using information and attending and completing tasks. (Doc. No. 15 at 1.) Second, Ebert asserts that the Appeals Council erred by disregarding two evidentiary submissions and improperly evaluating the others. (*Id.*) Upon a thorough review of the record and the parties' submissions, the Court finds that Ebert's first assertion of error warrants reversal and remand for further proceedings.

### A. ALJ's determination of SE's functional limitations

Ebert argues that the ALJ's findings of less than marked limitations in the domains of acquiring and using information and attending and completing tasks are not based on substantial evidence. (Doc. No. 15 at 11.) Specifically, Ebert challenges (1) the ALJ's reliance on SE's Weschsler Intelligence Scale for Children (WISC-5th edition, or "WISC-5") without analysis of other standardized test scores in the record (*id.*); and (2) the ALJ's designation of the questionnaire completed by SE's teacher, Janet Adamson, as "somewhat persuasive" although the ALJ appears to have neither relied on it nor discredited it in her findings (*id.* at 14-15).

The Commissioner responds that the ALJ's findings are supported by substantial evidence and sufficient detail to allow subsequent reviewers to understand how she reached her conclusions. (Doc. No. 18 at 7.) The Commissioner notes that in addition to the WISC-5, the ALJ considered other testing, report card grades, SE's Individualized Education Program ("IEP"), and the testimony of SE and her mother. (*Id.*) The Commissioner further

argues the ALJ was not required to give more weight to various standardized test scores, noting that the determination of functional equivalence is not based on test scores alone. (*Id*. at 8.)  Finally, the Commissioner reminds the Court that the issue is not whether there is evidence to support SE's allegations but rather whether the ALJ's findings are supported by substantial evidence.  (*Id.* at 9.)

Acquiring and using information[5] reflects the claimant's ability to acquire or learn information and how well she uses the information she has learned.  *Jackson ex rel. K.J. v. Astrue*, 734 F. Supp. 2d 1343, 1370 (11th Cir. 2010).  This requires consideration of more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in school.  *Jackson*, 734 F. Supp. 2d at 1370 (quoting SSR 09-3p).  Some examples of limited functioning are:  difficulty recalling important things learned the day before; difficulty solving mathematics questions or computing arithmetic answers; talking only in short, simple sentences; and difficulty explaining one's

---

[5] Functioning in the domain of acquiring and using information is described as follows:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science.  You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions.  You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change).  You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a (g)(2)(iv).

thoughts. 20 C.F.R. § 416.926a (g)(3). In this case, the ALJ found that SE had a less than marked limitation in this domain, but did not discuss how she reached that finding. (R. 106-108.)

Attending and completing tasks "looks at how well a child can focus and maintain attention; begin, carry through, and finish activities; avoid impulsive thinking; and manage her time." *Holland on behalf of West v. Comm'r Soc. Sec.*, 842 F. App'x 344, 348 (11th Cir. 2021) (citing 20 C.F.R. § 416.926a(h)). Regulations provide that a child of SE's age

> should be able to focus [her] attention in a variety of situations in order to follow directions, remember and organize [her] school materials, and complete classroom and homework assignments. [She] should be able to concentrate on details and not make careless mistakes in [her] work (beyond what would be expected in other children your age who do not have impairments). [She] should be able to change [her] activities or routines without distracting [he]rself or others, and stay on task and in place when appropriate. [She] should be able to sustain [her] attention well enough to participate in group sports, read by [her]self, and complete family chores. [She] should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv). Again, in this case, the ALJ found that SE had a less than marked limitation in this domain, but did not discuss how she reached that finding. (R. 106-108.)

As the Commissioner correctly argues, the ALJ "will not rely on any test score alone." 20 C.F.R. § 416.926a(e)(4). Yet, the ALJ is directed to "consider [the child's] test scores together with the other information [the Commissioner] has about [the child's] functioning, including reports of classroom performance and the observations of school personnel and others." *Id.* Further, the regulations state that the ALJ, when declining to

12

rely on a child's test scores, "will explain [the ALJ's] reasons for doing so in [the child's] case record or in [the ALJ's] decision." 20 C.F.R. § 416.926a(e)(4)(iii)(B). The ALJ failed to do so in this case.

The ALJ cited SE's test scores, IEP, report card for the first and second quarter of the 2018-19 school year, and the questionnaire completed by SE's second grade teacher, Janet Adamson. (R. 107.) Specifically, in regarding to testing, the ALJ discussed SE's WISC-5 scores and then generally noted "[a]dditional testing in September 2018 revealed that [SE] is performing at the kindergarten level in math and reading." (*Id*.) She also noted that Adamson's questionnaire was "somewhat persuasive" because she had first hand knowledge of SE's day-to-day performances. (*Id.*) Further, the ALJ considered the third party function report given by SE's grandmother. (R. 108.) The ALJ indicated that she gave the statements of SE's grandmother only partial weight because she is not a neutral third-party witness. (*Id.*)

SE had multiple standardized test scores in the record demonstrating her inability to read, write, and perform arithmetic at the appropriate grade level. She took standardized assessments in reading, math and written language in 2018. (R. 382.) Her scores on the Woodcock Johnson Tests of Achievement, Fourth Edition totaled 76, which was comprised of scores in the 70s range for oral reading fluency, broad reading, math facts fluency, broad math and spelling. (*Id*.) She scored in the 80s range for letter word identification, passage comprehension, calculation, sentence writing fluency and broad written language. (*Id*.) During the same time, she took the Adequate Achievement to Meet State Standards test where, as a second grader, she performed "comparable to that of an average

13

kindergarten[er] after the second month of school" in the math portion of the test. (*Id.*) In the reading portion of the test, her performance was "comparable to that of an average kindergartener after the start of the school year." (*Id.*) It was noted that "she will be best . . . served by instructional material prepared at the pre-kindergarten level." (*Id.*) SE was also administered a Behavior Assessment System for Children – Third Edition that indicated the areas of concern were learning problems, atypicality and functional communication. (R. 383.) She was administered the Adaptive Behavior Rating Scale and received a standard score of 77. (*Id.*) Further, the school records show that SE qualifies for special education services under the Alabama Administrative Code. (R. 391.)

However, the ALJ did not specifically reference these tests in her decision denying benefits. Nor did the ALJ explain her reasoning in her decision as to why she declined to rely on these test scores as required under the regulations. Such failure to consider a child-claimant's formal test scores generally amounts to a failure to develop a full and fair record that warrants remand for further consideration. *Person v. Kijakazi*, Civil Action Number 1:20-CV-01185-AKK, 2021 WL 4220357, at * 6 (N.D. Ala. Sept. 16, 2021) (listing cases). "Because the ALJ failed to address a variety of formal tests that may implicate and reinforce [SE's] limitations, especially in the domains of 'acquiring and using information' and 'attending and completing tasks,' remand is warranted here so the ALJ can consider [SE's] limitations, if any, in light of [her] formal testing." *Id*. The Court is mindful that it is not to reconsider the facts, reevaluate the evidence, or substitute its judgment for the ALJ's, thus "[w]hether the formal test scores are sufficient to change the ALJ's ultimate finding is for the ALJ to decide." *Id*.

As to Ebert's challenge to the ALJ's lack of discussion explaining her finding that the questionnaire completed by Adamson was "somewhat persuasive," the Court finds no error. Courts have noted that "categories of issues or observations listed within a school-personnel questionnaire may not necessarily correspond to the 'less than marked,' 'marked,' or 'extreme' ratings used in the Social Security regulations." *Person*, 2021 WL 4220357 at *7 (citing *Beavers v. Comm'r of Soc. Sec.*, 601 F. App'x 818, 823 (11th Cir. 2015)). The Court is mindful of revised regulations (applicable to claims filed after March 27, 2017) which do not require detailed discussion of evidence that an ALJ deems to be "inherently neither valuable nor persuasive." *See* 20 C.F.R. § 416.920b(c). Further, the ALJ is permitted to accord lesser weight to the opinions of educators than the opinions of medical professionals. *Holland*, 842 F. App'x at 349. Accordingly, Court finds that remand is not warranted on this issue.

B.   The Appeals Council

Ebert argues that the Appeals Council erred in refusing to review properly presented new and material evidence. (Doc. No. 15 at 7-8.) First, Ebert takes issue with the Appeals Council's failure to acknowledge educational records from L.K. Moss Elementary School (the "Moss Records") and medical records from Zoe Pediatrics (the "Zoe Records"). (*Id.* at 8.) Second, Ebert asserts that the Appeals Council erroneously determined that the medical source statement from Dr. Christy McKay did not relate to the period at issue. (*Id.* at 10.)

The Commissioner admits that the Moss and Zoe Records were submitted to the agency but were "apparently not associated with [Ebert's] claim until after the Appeals

15

Council had denied her request for review." (Doc. No. 18 at 12.) The Commissioner acknowledges that a failure to review new, material, and chronologically relevant evidence is legal error, but asserts that Ebert has not argued that the material is new, material, and chronologically relevant. *Id.* Finally, the Commissioner asserts that even if Dr. McKay's opinion was chronologically relevant, Ebert did not show that the evidence raised a reasonable probability of changing the ALJ's decision.

The Court is concerned about the Appeals Council's failure to properly "associate" Ebert's submissions with her appeal. Nonetheless, the Court need not address this issue presented because the case is being remanded to the Commissioner for further consideration. *See, e.g., Demench v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that it is unnecessary to review other issues raised on appeal where remand is required and such issues will likely be reconsidered in the subsequent proceedings).

## VI.   CONCLUSION

For the foregoing reasons, the Court finds that the decision of the Commissioner is not in accordance with applicable law. Therefore, it is hereby

ORDERED that the decision of the Commissioner is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and this matter is REMANDED for further proceedings consistent with this opinion.

A separate judgment will be issued.

DONE this 27th day of June, 2022.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE